IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RAYMOND MARK KENT,               )
    Petitioner,                          )        Civil Action No. 06-52 Erie
                                                )
    v.                                         )
                                                )        **District Judge McLaughlin**
DISTRICT ATTORNEY OF               )        **Magistrate Judge Baxter**
ERIE COUNTY,  et al.,               )
    Respondents.                       )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.   RECOMMENDATION

It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

### II.   REPORT

Petitioner, Raymond Mark Kent, is a state prisoner incarcerated at the State Correctional Institution located in Mercer, Pennsylvania.  He is serving a term of imprisonment of five and one-half years to twenty years on convictions for involuntary deviate sexual intercourse, false imprisonment, and simple assault.  Currently pending before this court is his Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254.  (See Petition, attached in full to Docket # 17; see also Petitioner's Response, Docket # 26).  In Claim 1, he contends that the trial court erred in failing to remove his court-appointed trial counsel, with whom he had an irreconcilable conflict, thus denying him effective assistance of counsel under the Sixth and Fourteenth Amendments.  In Claim 2, he contends that his trial counsel provided him with ineffective assistance for failing to conduct DNA tests to demonstrate that he did not commit involuntary deviate sexual intercourse.

Respondents have submitted the relevant portions of the state court record in hard-copy format and the documents contained therein are indexed and numbered 1 through 98.  The state

court record will be cited to as "SCR No. __".  Respondents also have submitted the relevant transcripts in hard-copy format.

### A.     Relevant Procedural History

In or around September 1999, Petitioner was charged in Erie County with involuntary deviate sexual intercourse, unlawful restraint, false imprisonment, and simple assault (this latter charge was later amended to reckless endangering).  The charges stemmed from Petitioner's sexual assault of his adult sister.

Andrew H. Weinraub, Esq., was appointed to represent Petitioner.  On January 12, 2000, Petitioner appeared before the Honorable Stephanie Domitrovich of The Court of Common Pleas of Erie County.  He entered a plea of no contest to the charges of unlawful restraint and reckless endangering. (Tr. 1/12/2000 at 13-15).  The Commonwealth agreed to *nolle prosse* the charges of involuntary deviate sexual intercourse and false imprisonment.  (Id.)  Petitioner was informed that the total maximum that he could be sentenced to was seven years incarceration and sentencing was set for March 2000.  (Id. at 12-13).

Several days later, Petitioner filed a *pro se* motion to withdraw his plea.  (SCR No. 7). On January 28, 2000, Judge Domitrovich heard argument on the motion.  Petitioner contended that he was entitled to withdraw his plea because:

> I was told by my mother that the victim, my sister …, has told the D.A.'s office that she didn't want me to go to jail, but she wanted me to be placed in a drug and alcohol rehab as the incident that occurred on 8-9-99 involved drugs and alcohol. I had discussed this with my attorney, Mr. Weinraub.  I had told Mr. Weinraub that if the D.A. would sentence me to rehab and probation, that on the day, 1-12-2000, of my plea I would plead no contest to unlawful restraint and simple assault. Since I was called to the courthouse on 1-12-2000, I assumed that the D.A. had accepted this plea.  I was very upset when Your Honor set my sentencing for 3-3-2000.  It did not register in my mind that I had been lied and tricked into pleading to these charges until I was being led away from your courtroom.
>
> I have said from the beginning, and I'm still saying I am innocent.  What happened that night was consensual.

(Tr. 1/28/2000 at 3-4).  During the proceeding, Judge Domitrovich explained to Petitioner that the decision of when and how to sentence Petitioner was the judge's decision, not Attorney Weinraub's decision.  (Id. at 8-9).  She found that "there were no tricks involved."  (Id. at 9).

2

Nonetheless, Judge Domitrovich allowed Petitioner to withdraw his plea. (Id.) She then reinstated the two counts against Petitioner that had been *nolle prossed* (the charges of involuntary deviate sexual intercourse and false imprisonment). (Id. at 10).

Before the proceeding concluded, the following exchange occurred:

Mr. Foulk: Judge, given the fact that he is alleging Mr. Weinraub lied to him, and misled him and tricked him, do you feel that you and your lawyer have reached differences that you cannot reconcile, sir?

Mr. Kent: Yes, I do.

The Court: Then, sir, you are going to represent yourself. You only get one choice. You either get this counsel or you represent yourself.

Mr. Kent: I will accept the counsel.… I have no legal knowledge.

The Court: Okay. So you want counsel?

Mr. Kent: Yes.

The Court: Attorney Weinraub, he's yours. That's it.

(Id. at 10-11). On or around January 31, 2000, Attorney Weinraub filed a motion to withdraw as counsel (SCR No. 10), which the court denied.

Petitioner's trial commenced on March 20, 2000. The Superior Court of Pennsylvania described the evidence presented at trial as follows:

> Evidence indicated [Petitioner] and his sister had some beers and smoked crack cocaine on the night of the incident. While later driving around Erie, Kent claimed he had to go to the bathroom. He pulled off the road to a shelter location near some woods. While at this location, he pulled his sister out of the car and into the woods. He then removed her clothes, tied her hands behind her back, and tied her legs to different trees. As a result of intoxication and being choked, his sister moved in and out of consciousness. At one point she awoke to find her brother performing oral sex on her.
>
> [Petitioner] eventually left the scene, leaving his sister tied in the woods. She eventually worked her way free, put her clothes back on, flagged down a passing motorist and summoned the police. Ligature marks were noted on her wrists and around her neck.
>
> [Petitioner], on the other hand, testified that the activity between he and his sister was wholly consensual and was part of a long-standing physical relationship between them. He claims he tied his sister in preparation for sex at her suggestion. At some point, prior to her being totally bound, [Petitioner] claims his sister wanted more crack. He claims he untied her, she then got redressed, but she didn't want to go back downtown, so she gave him fifty dollars and waited in the woods for him to return with drugs. [Petitioner] claimed she later complained only because he took so long in returning to the scene.

> While awaiting trial, [Petitioner] wrote a number of letters to his sister, apologizing and asking her to save him from prison by testifying the sexual contact between them had been consensual. These letters were admitted into evidence.

(SCR No. 62 at 1-2).

At trial, the Commonwealth and the defense stipulated to the introduction of laboratory test results that revealed that: no seminal material was detected on the vaginal swabs and smears or the oral swabs and smears taken from the victim; no evidence of apparent investigative significance was detected in her pubic hair combings and fingernail scrapings; and, no blood stains or semen stains were found on her clothing. (Trial Tr. 3/20, 3/22/2000 at 155-57).

Under the Pennsylvania Crimes Code, deviate sexual intercourse is defined as: "Sexual intercourse per os [mouth] or per anus between human beings[.]" 18 Pa.C.S. § 3101. At the conclusion of testimony at trial, Attorney Weinraub moved for a judgment of acquittal on the involuntary deviate sexual intercourse charge, arguing that "there was no penetration" with the tongue. (Trial Tr. 3/20, 3/22/2000 at 179). Judge Domitrovich denied the motion. (Id. at 182).

In instructing the jury on the charge of involuntary deviate sexual intercourse, Judge Domitrovich explained that one commits "involuntary deviate sexual intercourse if he or she has deviate sexual intercourse with another person of the same or opposite sex by forcible compulsion or by a threat of forcible compulsion that would prevent resistance by a person of reasonable resolution.… deviate sexual intercourse is sexual intercourse by mouth or by anus between two people. Thus it is deviate sexual intercourse if a man uses his mouth to have sexual intercourse with the vagina of a woman." (Trial Tr. 3/21/2000 at 129-30).

On March 22, 2000, the jury convicted Petitioner of involuntary deviate sexual intercourse, simple assault, and false imprisonment. Judge Domitrovich sentenced him to a total of five and one-half to twenty years imprisonment, followed by four years probation and costs and fines.

After the trial, Judge Domitrovich permitted Attorney Weinraub to withdraw from representation of Petitioner. (Tr. 4/20/2000 at 9). Ultimately, on April 26, 2002, Judge Domitrovich appointed Sue Anthony Pfadt, Esq., to represent Petitioner and reinstated his right

to file a direct appeal *nunc pro tunc*. (SCR Nos. 55 & 62). Petitioner, through Attorney Pfadt, claimed on direct appeal that: (1) the evidence was insufficient to support the verdict on the involuntary deviate sexual intercourse conviction because the Commonwealth did not prove penetration of the vagina; and (2) the trial court erred by failing to properly instruct the jury on the necessary elements of involuntary deviate sexual intercourse because the court did not instruct the jury that penetration of the victim's vagina was necessary to establish that crime. (SCR Nos. 64 & 64A).

On May 23, 2003, the Superior Court affirmed Petitioner's judgment of sentence. (SCR No. 69). The state court held that in order to sustain a conviction for involuntary deviate sexual intercourse, the Commonwealth must establish the defendant engaged in acts of oral or anal intercourse, but that "'actual' penetration of the vagina is not necessary; *some form of oral contact with the genitalia of the female victim is all that is required*." (SCR No. 64A at 2 (emphasis added) (quoting Commonwealth v. L.N, 787 A.2d 1064 (Pa.Super.Ct. 2001); In The Interest of J.R., 648 A.2d 28 (Pa.Super.Ct. 1994)); see also SCR No. 69 at 2). Thus, the court's instruction to the jury on involuntary deviate sexual intercourse was in accord with Pennsylvania law. (Id. at 3-4). And, because the Commonwealth presented evidence from which the jury could find that Petitioner had some form of oral contact with the genitalia of the victim, his claim that there was insufficient evidence to support a conviction failed. (Id. at 2-3).

Judge Domitrovich appointed William J. Hathaway, Esq., to represent Petitioner for the purpose of filing a petition for allowance of appeal with the Pennsylvania Supreme Court. (SCR No. 70). On July 1, 2004, the petition for allowance of appeal was denied. (SCR No. 71).

Next, on September 20, 2004, Petitioner filed a *pro se* motion for collateral relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46. (SCR No. 72). Judge Domitrovich appointed Attorney Hathaway to represent Petitioner as PCRA counsel and counsel filed a supplement to the PCRA motion. (SCR No. 75).

In Petitioner's PCRA motion and the supplement thereto, he raised the same two claims that the has raised in the instant habeas petition. Petitioner argued there, as he does here, that Judge Domitrovich should have removed Attorney Weinraub as defense counsel after it became

1  apparent at the hearing in which Petitioner withdrew his plea that counsel and Petitioner had "a
2  complete breakdown in communication" and an "irreconcilable conflict." (PCRA Memorandum
3  of Law (attached to SCR No. 72) at 15; SCR No. 75 at 1-2). Petitioner also contended that
4  Attorney Weinraub "conspired" with the prosecution and provided him with ineffective
5  assistance when he stipulated to the introduction of the forensic lab reports. (Id. at 17). Within
6  this claim, he argued that counsel was ineffective for failing to obtain DNA evidence to
7  exonerate Petitioner. (Id.) He claimed that the only evidence that he committed a deviate sexual
8  act upon the victim was the victim's testimony and that counsel should have had DNA tests
9  conducted to demonstrate "[l]ack of evidence of sexual contact." (Id.)

10       On December 9, 2004, Judge Domitrovich presided over an evidentiary hearing at which
11  Attorney Weinraub and Petitioner, among others, testified. On February 7, 2005, Judge
12  Domitrovich issued a memorandum order denying Petitioner relief on all claims. (SCR Nos. 79
13  & 87).

14       On September 26, 2005, the Superior Court issued a memorandum opinion affirming
15  Judge Domitrovich's decision. (SCR No. 95). With regard to Petitioner's claim that Judge
16  Domitrovich erred in failing to remove Attorney Weinraub as defense counsel prior to trial, the
17  Superior Court determined that the claim was waived because Petitioner could have, but did not,
18  raise the claim on direct appeal. (SCR No. 95 at 6-8). With regard to Petitioner's contention that
19  Attorney Weinraub provided him with ineffective assistance for stipulating to the results of the
20  forensic reports and for failing to introduce DNA evidence, the Superior Court adopted in full
21  Judge Domitrovich's decision denying the claim on the merits. (Id. at 95 at 6; SCR No. 79 at 17-
22  19).

23       On December 29, 2005, the Supreme Court of Pennsylvania denied Petitioner's
24  application for relief filed pursuant to Rule 123 of the Pennsylvania Rules of Appellate
25  Procedure. (SCR No. 96). Petitioner then filed with this court his petition for writ of habeas
26  corpus pursuant to 28 U.S.C. § 2254.

**B.     Exhausion**

The doctrine of "exhaustion" requires a state prisoner to first present his federal constitutional claims to the state courts before raising those claims in federal habeas court.  28 U.S.C. § 2254(b)(1)(A); see e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843 (1999).  In Pennsylvania, this requirement typically means that a petitioner in a non-capital case must present every claim raised in his federal petition to both the Common Pleas Court and the Superior Court either on direct appeal or during PCRA proceedings.  See Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004).  Petitioner raised the two claims at issue in the instant habeas petition during the PCRA proceedings.  Accordingly, he has satisfied the exhaustion requirement.

**C.     Discussion**

**1.     Claim 1 is Procedurally Defaulted**

As set forth above, the Superior Court of Pennsylvania declined to review Claim 1 on the merits because it determined that Petitioner waived the claim.  Specifically, it held:

> [Petitioner] asserts the trial court committed an abuse of discretion at the original trial for failing to appoint new counsel in the face of an "irreconcilable conflict." … Specifically, [Petitioner] contends the trial court did not fully determine whether an irreconcilable conflict existed between client and attorney, "which caused prejudice to [Petitioner] in that he was denied effective representation during a critical stage of [Petitioner's] criminal proceedings." … [Petitioner] is referring to his aborted plea bargain. [Petitioner] claims Weinraub lied to him and tricked him into pleading no contest.…
>
> To establish a cognizable claim under the PCRA motion, the petitioner must establish that the issues have not been waived.  42 Pa.C.S. § 9543(a)(3).  "An issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding."  42 Pa.C.S. § 9544(b).  Here, [Petitioner] did not raise the purported abuse of discretion by the trial court until the PCRA motion.  Unlike general claims of ineffectiveness of counsel which should only be raised during collateral review, see Commonwealth v. Grant, 813 A.2d 726, 738 (Pa. 2002), a claim of the trial court's abuse of discretion for not replacing an attorney due to irreconcilable differences between that attorney and his client should have been raised on direct appeal.  See 42 Pa.C.S. § 9544(b); see Commonwealth v. Bond, 819 A.2d 33, 39 (Pa. 2002) (issues are waived under PCRA if appellant could have presented them on direct appeal but failed to do so); Commonwealth v. Bracey, 795 A.2d 935, 940 (Pa. 2001) (same).  In his direct appeal, [Petitioner] raised only sufficiency claims.…  Since [Petitioner] could have raised this issue on direct appeal but chose not to, the issue is hereby waived.  42 Pa.C.S. § 9544(b).

(SCR No. 95 at 6-8).

Because the Superior Court denied Petitioner relief on Claim 1 based upon a state procedural rule of waiver, it must be determined if that ruling precludes this court from addressing the merits of the claim under the "procedural default" doctrine. This doctrine is "grounded in concerns of comity and federalism," Coleman v. Thompson, 501 U.S. 722, 729-30 (1991), and it bars habeas relief on a federal constitutional claim whenever the petitioner has failed to comply with a state's procedural rule when he raised that claim in state court. Id.

Before a state procedural rule can act as a bar to relief in federal court, however, the rule must be both "independent" of federal law and its application "adequate." Id. Here, the decision by the Superior Court to deny Petitioner relief based upon state procedural grounds was "independent" of federal law. Under Pennsylvania statutory law, an issue raised for the first time in a PCRA petition is waived if the petitioner could have raised it, but failed to do so, on direct appeal. 42 Pa.C.S. § 9544(b). A state procedural rule is "adequate" if it is "firmly established and regularly followed" at the time that the alleged procedural default occurred.[1] Ford v. Georgia, 498 U.S. 411, 423-24 (1991) (quoting James v. Kentucky, 466 U.S. 341, 348-51 (1984)). Here, the Superior Court's decision was "adequate," since, at the time of Petitioner's waiver, Pennsylvania appellate courts consistently and regularly dismissed review of claims of trial court error as waived in non-capital cases when those claims were raised for the first time during PCRA proceedings. See e.g., Bond, 819 A.2d at 39; Bracey, 795 A.2d at 940.

### a.  No "cause" and "prejudice"

A petitioner whose constitutional claim has not been addressed on the merits due to the failure to comply with a state procedural rule can overcome the default, thereby allowing federal

---

[1] "While the state rule should be applied 'evenhandedly to all similar claims,' state courts only need demonstrate that in the 'vast majority of cases,' the rule is applied in a consistent and regular manner." Doctor v. Walters, 96 F.3d 675, 684 (3d Cir. 1996) (quoting Hathorn v. Lovorn, 457 U.S. 255, 263 (1982) and Dugger v. Adams, 489 U.S. 401, 410 n.6 (1989)).

8

court review, if he can demonstrate "cause" for the default, *i.e.,* that some objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and "actual prejudice."  Coleman, 501 U.S. at 750; see also Murray v. Carrier, 477 U.S. 478, 488, 494 (1986).

In this case, the only possible "cause" that Petitioner could point to would be his appellate counsel's (Attorney Pfadt's) failure to raise this claim on direct appeal.  However, to the extent that Petitioner would advance such an argument, it is insufficient to sustain his burden of showing "cause" for his default.  First, Attorney Pfadt's decision not to raise this claim on direct appeal is not the type of conduct that satisfies the "cause" requirement.  As the Third Circuit Court has stated:

> Examples of "cause" that are "external to the defense" include interference by the state with the conduct of a defense or the previous unavailability of the factual or legal basis of a claim. *Generally, "cause" cannot be based on the mere inadvertence of the petitioner or petitioner's counsel to take an appeal*. "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, *or failed to raise the claim despite recognizing it*, does not constitute cause for procedural default." [Murray v. Carrier, 477 U.S. at 486].  Indeed, in Coleman v. Thompson, 501 U.S. 722 [ ] (1991), the Court addressed . . . the effect of a litigant's inadvertent failure to take a timely appeal in a state collateral proceeding. The Court, applying Murray v. Carrier, concluded that an "ignorant or inadvertent procedural default" does not satisfy the cause element of cause and prejudice. Coleman, 501 U.S. at 752[.]

Cristin v. Brennan, 281 F.3d 404, 420 (3d Cir. 2002) (emphasis added).

Second, while the Supreme Court has recognized that attorney error that constitutes ineffective assistance of counsel within the meaning of Strickland v. Washington, 466 U.S. 668 (1984) can constitute cause for relief from procedural default, Coleman, 501 U.S. at 753-54, in the instant case Petitioner may not rely on appellate counsel's alleged ineffective assistance to avoid procedural default.  Concerned with comity and the prospect of placing federal courts in the anomalous position of adjudicating unexhausted state claims, the United States Supreme Court has required strict exhaustion of state remedies, even when counsel has been responsible for some procedural default.  See Murray, 477 U.S. at 488-89.  Thus, "a claim of ineffective assistance of [appellate] counsel [must] be presented to the state courts as an independent claim before it may be used to establish procedural default." Id. at 489.  This Petitioner failed to do.

Although Petitioner raised a broad claim of ineffective assistance of appellate counsel in his PCRA motion, Judge Domitrovich determined that he "failed to even state what particular issues he wanted appellate counsel to raise concerning trial counsel's ineffectiveness or otherwise." (SCR No. 79 at 16). Because Petitioner "failed to even plead, present, and prove" (id.) his claim of ineffective assistance of appellate counsel during the PCRA proceedings, it may not serve as "cause" excusing him from procedural default during these proceedings.

### b.     No Fundamental Miscarriage of Justice

A default of a claim may also be excused under the "fundamental miscarriage of justice" exception. Under this exception, a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" Schlup v. Delo, 513 U.S. 298, 316 (1995); House v. Bell, ___ U.S. __ , 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006); Hubbard v. Pinchak, 378 F.3d 333, 339-41 (3d Cir. 2004).

Although Petitioner contends that he is actually innocent, he does not direct this Court to any evidence that satisfies the Schlup standard and excuses his default. He claims that his sister consented to engaging in sexual activity with him, but that allegation does not satisfy the Schlup standard. He presented that same defense to the jury and it was rejected. And, the "actual innocence" doctrine ordinarily requires new and reliable physical, scientific, or eyewitness evidence that would persuade any rational juror that a petitioner *could not have committed the crime for which he was convicted*. House, 126 S.Ct. at 2076-86; Hubbard, 378 F.3d at 339-40. No such evidence exists here. See infra.

Accordingly, because Claim 1 is procedurally defaulted and neither the "cause and prejudice" nor the "miscarriage of justice" exception is applicable to excuse his default, he is not entitled to habeas relief on this claim.[2]

---

[2] It is noted that after Judge Domitrovich concluded that Petitioner had waived Claim 1, she determined that, even

(continued...)

### 2. Claim 2 Has No Merit

In Claim 2, Petitioner contends that Attorney Weinraub provided him with ineffective assistance for failing to conduct DNA tests in order to demonstrate that Petitioner did not have sexual contact with the victim. In rejecting this claim on the merits, the Superior Court adopted in full Judge Domitrovich's decision on this claim. (SCR No. 95 at 6; SCR No. 79 at 18-19). In her decision, Judge Domitrovich held that Attorney Weinraub did not provide Petitioner with ineffective assistance because his defense at trial was that he and his sister engaged in consensual sexual activity on the night in question. (SCR No. at 18-19). He also admitted at trial that they engaged in considerable sexual contact during the incident. (Id.) Thus, physical evidence such as DNA evidence that would have demonstrated a lack of sexual contact would not have furthered his defense. (Id.)

Judge Domitrovich further noted that Attorney Weinraub did present evidence to demonstrate that no sexual assault occurred. (Id.) Counsel stipulated to the introduction of the laboratory test reports that demonstrated that no semen or blood was found on the victim. (Id.) Moreover, counsel called the emergency room nurse that prepared the rape kit report on the victim and secured from her testimony that the results of that report indicated no "evidence of

---

[2](...continued)
assuming *arguendo* that the claim had not been waived, it would still fail. (SCR No. 79 at 21-25). Judge Domitrovich thoroughly analyzed the merits of this claim and concluded:

> Attorney Weinraub was clearly a competent advocate on [Petitioner's] behalf. Furthermore, Attorney Weinraub was ready and willing to represent [Petitioner] throughout this case. Attorney Weinraub's filing of a Motion to Withdraw does not mean that he was not ready and willing to represent [Petitioner]. Rather, upon this [court's] denial of Attorney Weinraub's Motion, Attorney Weinraub continued his zealous representation of [Petitioner] by meeting with [Petitioner], discussing trial strategy, examination, witnesses, and all other relevant matters that were likely to arise. [Petitioner's] right to a fair and just trial was not abrogated by this [court's] denial of his request for new trial counsel.... Furthermore, although [Petitioner] has alleged irreconcilable differences existed between himself and Attorney Weinraub, [Petitioner] has failed to prove irreconcilable differences existed. Throughout the course of Attorney Weinraub's representation of [Petitioner], Attorney Weinraub and [Petitioner] maintained communication and contact, and there is no evidence that irreconcilable differences existed or that there existed any other impediment to Attorney Weinraub's zealous advocacy on behalf of [Petitioner].

(Id. at 25). For the reasons outlined by Judge Domitrovich, even if this claim were not procedurally defaulted, Petitioner would not be entitled to habeas relief on Claim 1.

11

sexual assault[.]" (3/21/2000 Tr. at 35-36).

Because the state court adjudicated this claim on the merits, this court must review the claim under the deferential standard set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") (codified at 28 U.S.C. § 2254(d)).  Under AEDPA, federal habeas relief may only be granted when the state court's decision on the merits of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1); see also Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Lambert, 387 F.3d at 234.  The "clearly established Federal law" in which to analyze Petitioner's claim of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Supreme Court held that in order to establish that counsel's service was constitutionally deficient, a petitioner must demonstrate: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that the deficient performance prejudiced the defense.  See also Wiggins v. Smith, 539 U.S. 510 (2003).

### a.     The State Court Decision Was Not "Contrary to" Strickland

The state court's adjudication of this claim was not "contrary to" Strickland.  The state court cited to Strickland and applied its legal standard to all of Petitioner's claims for ineffective assistance of counsel.  (SCR No. 79 at 4; see also SCR No. 95 at 5-6).  That is sufficient to satisfy review under the "contrary to" clause of § 2254(d)(1).  As the Williams Court instructed, "a run-of-the mill state-court decision applying the correct legal rule from [Supreme Court] cases [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." 529 U.S. at 406.

### b.     The State Court Decision Was Not an "Unreasonable Application of" Strickland

The dispositive question, then, is whether the state court's adjudication of this ineffective assistance of counsel claim was an "unreasonable application" of Strickland.  To prevail under this standard of review, Petitioner must demonstrate that the state court's application of Strickland "cannot reasonably be justified under existing Supreme Court precedent."  Hackett v.

Price, 381 F.3d 281, 287 (3d Cir. 2004). Petitioner has not met that burden.

The state court succinctly discussed why Petitioner's argument that Attorney Weinraub should have developed additional evidence, including DNA evidence, had no merit. Petitioner's defense to the crimes charged was that the sexual activity was consensual, and evidence that Petitioner's bodily fluids were absent from the victim would not have furthered that defense. In any event, to bolster the defense of consent and demonstrate that the victim did not do anything against her own will, Attorney Weinraub did secure evidence that no sexual assault had occurred.

In conclusion, the state court has reiterated to Petitioner, both on direct appeal and during post-conviction proceedings, that the elements of involuntary deviate sexual intercourse are satisfied if the jury determines that oral sex was performed upon the victim without her consent. The victim's testimony, which was credited by the jury, was sufficient to secure a conviction as to that crime. The jury did not credit Petitioner's consent defense and it determined that a deviate sexual act had been committed. That finding was not a result of constitutionally deficient representation on counsel's part.

Based upon all of the foregoing, Petitioner has not demonstrated that the state court's adjudication of this claim was "contrary to" or an "unreasonable application of" Strickland and he is not entitled to habeas relief on this claim.

### 3.   Petitioner's Summary Judgment Motion Is Denied

Petitioner has filed two Motions for Summary Judgment in which he contends that he has proven that he is entitled to habeas relief on his claims. (Docket ## 28 and 29). In light of this Report and Recommendation that habeas relief be denied, Petitioner's motion is DISMISSED AS MOOT.

### D.   Certificate of Appealability

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Amended Section 2253 provides that

"[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  In Slack v. McDaniel, 529 U.S. 473, 474 (2000), the Supreme Court stated that "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Applying this standard here, jurists of reason would not find it debatable whether Claim 1 is procedurally defaulted and Claim 2 is without merit.  Accordingly, a certificate of appealability should be denied.

### III.   CONCLUSION

For the foregoing reasons, it is respectfully recommended that the instant petition for writ of habeas corpus be denied and that a certificate of appealability be denied.

In accordance with 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

S/Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief U.S. Magistrate Judge

Dated:  April 24, 2007